192546 and we will take the case that's first after the second case. So we should have Mr. Taylor, I see you, and Mr. Dvoretsky. So Mr. Taylor, you may begin. Thank you and may it please the court. Jonathan Taylor for the plaintiff, Eric White. USERRA entitles any employee when taking leave from work to perform military service to receive all non-seniority based rights and benefits that the employer provides for any non-military leave that is comparable to the military leave. Those rights and benefits vary among the different types of comparable leave and the military leave must be given the most favorable treatment. At issue in this appeal are two distinct questions that flow from this most favorable treatment provision. Number one, does the term rights and benefits include paid leave, that is continuing to receive one's normal pay while on leave? And number two, has the plaintiff in this case, a reservist who occasionally takes a short amount of time away from work to perform military training exercises, has he properly alleged in his complaint that such short-term military leave is comparable to other forms of leave such as jury duty leave and sick leave? And the answer to both of those questions is yes. Does the record show say the shortest time that he would be off on this reservist leave and the longest time? Is it like a matter of a weekend versus two weeks or do we have any idea? So that's not in the record in the complaint. It says that he occasionally takes short amounts of leave. What I can say is that what typically happens is a day or two, typically it's on the weekend so ordinarily most employees don't need to take leave for those drills. And then there's a two-week annual training that occurs as well. And so it depends on the particular schedule that the that the plaintiff has, but it's not uncommon for him to take a day or two a month and then a longer portion per year for that annual training. No, I take it as a pilot for United, he doesn't have, you know, the kind of typical seven-day week where Monday through Friday are work days and Saturday and Sunday are weekend. Don't they have a more rolling schedule? I believe that's right, yes. And so he's a little bit abnormal as compared to the typical employee who works Monday through Friday. And that might mean that he occasionally has to take more, you know, a day or two here and there for these weekend drills. But in that sense it's not, he's not unlike a person who's called to perform grand jury service, for example, who might be required to take multiple days per month for a year or more while away from work. Mr. Taylor, a question with regard to the interpretation of 43-16 B-1. If we find your argument with regard to the text of the statute persuasive, but we find United's argument with regard to the context persuasive, where should that leave us in terms of the interpretation of right and benefit? I think if you find that the text of the operative provision is clear, both 43-16 B-1 and then the definitional provision, if those two provisions are crystal clear, then I think the Supreme Court's cases have made very clear that you follow the text. And there's no need to resort to context or some other statute to clarify the meaning. And so I do think it helps to begin with the text. And we can talk about the context in a second. But if you begin with the text, the text here is very clear. The term rights and benefits includes paid leave on our view because of a straightforward understanding of that text. USERA defines the term broadly to include any advantage, profit, privilege, or gain of employment without any exception. And paid leave is unquestionably an advantage, profit, privilege, or gain of employment. So I do think you can just decide the first question in the case without resort to anything else. But United makes one argument that I do want to respond to that is because the definition contains a parenthetical that says including wages or salary for work performed that only such wages are included, not paid leave. And that is incorrect for five reasons. One is that receiving one's regular wages is, of course, as I just mentioned, indisputably an advantage, profit, privilege, or gain of employment. And there's no exception. So paid leave is therefore a right or benefit under the statute. But number two, nothing in the parenthetical even purports to change that. It uses the word including, which makes it illustrative rather than restrictive. And the Supreme Court's recent decision in Bostock makes clear there's no such thing as a cannon of donut holes, just the opposite. Number three, the reason the parenthetical refers only to wages for work performed is that that category used to be excluded, but Congress eliminated that one so it didn't somehow create a new implied exception that wasn't there before. Number four, the language that follows the parenthetical confirms that wages for work not performed must be included within the scope of the statute because it speaks of things such as paid vacations and severance pay as being examples of covered rights and benefits. And then finally, reading the definition to somehow exclude wages for work performed, for work not performed, would conflict with the Third Circuit's decision in Walter Meyer, where the claim to benefit was the right to receive wages for days not worked. And Congress then codified Walter Meyer and defined the statutory term rights and benefits broadly to include all attributes of the employment relationship. And quite plainly, that covers paid leave as well. And so I think this is why, you see United look to context, to try and stitch together some argument to authorize this court to revise what is otherwise quite crystal clear plain statutory text. Mr. Taylor, before you get to context, let me ask you on the statutory text. There are two contra indicators, are there not? One is in 4316D, as the company points out, and then another is that Title V provision. Now, I understand that Title V is not part of 4316. In fact, it's in an altogether different portion of the U.S. Code. But how do you think that those two provisions bear upon our construction of the operative provision here? So I don't think they require revising the definition at all. And I'm glad you asked that question. If I may, I'll take them in reverse order and begin with the military leave statute, and then turn to the subsection D. The federal government's decision to provide military leave to its own employees does not change the outcome here for three reasons. The first is that it's not part of USERRA, and USERRA's plain text is unambiguous, and so you don't need to look anywhere else. But number two, the military leave statute and USERRA have entirely different purposes. The leave statute is the government acting as employer, creating a policy, an employment policy for its employees. USERRA is the government acting as a regulator, creating a rule that all employers, public and private alike, must comply with. The fact that the federal government as employer might have a policy that complies with its own rule as regulator is as unsurprising as it is unhelpful in trying to determine what that rule means. If anything, the existence of this statute would appear to undercut United's argument, which I think would be stronger if the statute didn't exist, and there were some gaping disparity between jury duty leave and sick leave on the one hand, and then military leave on the other. So in that sense, United's reliance on it is a bit puzzling to me. But I will just say that even if it were relevant, the federal military statute exists for a good reason. It's an absolute entitlement that federal employees get automatically. It doesn't turn on anything else. Isn't that the critical distinction? There are other statutes, too, where one might have an entitlement. There's no entitlement created by USERRA. There's simply a statement that if certain kinds of leave are given, then military leave has to be just as good. But any employer, United could abolish paid vacation tomorrow if it wanted to, and wouldn't have this problem. That's exactly right. And so I think it's the difference between having a mandate, a right to receive something, and then an equal treatment rule, which is what 4316B is. And I'll just note a couple of other things on this, that under this federal military leave provision, that an employee to receive paid military leave under it, they don't have to prove comparability. They don't have to suffer the indignity of going into the HR and haggling every weekend service. They get it automatically. And the pay is fully paid. So they get it on top of their military pay, and it rolls over. And it can also be used for active duty service. So if an employee has accumulated 15 days of leave from the previous year and 15 days from the current year, and then they get called into active service, they've got 30 days of leave there for them. And so I think this is, it's really just sort of apples and oranges. And then real quickly, before I sit down for a second, I do want to respond to the point about subsection D, so 4316D. And in particular, the Department of Labor's decision to exclude paid sick leave from this. And so what this provision does is it says, the statute says that when an employee takes military leave, they are entitled to use certain benefits like accrued vacation leave while on paid sick leave. And United makes the argument that that's somehow inconsistent with our position. And that's not correct. The first thing I would note just as a predicate to my response is that this rule and the provision that it interprets doesn't purport to interpret rights and benefits. And if anything, it's relevant only to the comparability of sick leave, not jury duty leave. But even as to that question, our position is fully consistent with this rule. The district court in Travers versus FedEx recognized as much. And the reason for this is simple. Say an employee provides five days of paid sick leave, which is a pretty common amount, maybe it's two weeks, but a short amount that's fixed and kept. If sick leave and short-term military leave are comparable, then the employer must also provide five days of paid military leave. And say you have a reservist who takes that two-week annual training and then uses up the paid sick leave. And so our position is perfectly consistent with the Department of Labor's rule. If there are no further questions, I'll reserve the remainder of my time for rebuttal. That would be fine. Yes. So, Mr. Dvoretsky. Good morning, Your Honors. Shai Dvoretsky with Jones Day on behalf of the appellees. When Congress passed USERRA, it had long been understood that USERRA's predecessor statutes did not require employers to provide paid military leave. The Supreme Court said so in Monroe. It would have been no small thing if Congress had changed that. Yet, on Mr. White's interpretation of USERRA, over half of the civilian workforce, including nearly all state and local government employees, became eligible for paid military leave when Congress passed USERRA in 1994 because their employers offered paid- I just want to know why you're characterizing this as a right to paid military leave instead of what the statute says is a right to comparability. So it's the employer who actually holds the cards to begin with. An employer might not have, as Mr. Taylor was just saying, very many days of sick leave. Or an employer might not handle vacation in a way that's comparable. Or an employer might, in any number of other ways, structure its employment. So there's no right in those situations. It's a comparability point. Judge, what if I could make two points in response to that? One, on Mr. Taylor's argument and Mr. White's view, there is no comparability analysis to conduct because military leave is categorically comparable to paid sick or jury duty leave. Well, that is the comparison, though. Do you think all employers have the same sick and vacation and jury duty policies? At a minimum, I think that the vast majority of employers nowadays, and in 1994, have some sort of paid sick or jury duty leave. Is there a statute that requires them to do this? There are various state and local laws that require it. The Chamber's amicus brief discusses this a little bit at page 10 and notes that 36 states plus the District of Columbia require at least one form of paid absence that, on Mr. Taylor's view, would be comparable to military leave. And in addition, the record before Congress showed that even in 1994, more than half of the civilian workforce worked for employers that provided paid sick or jury duty leave. And if Congress passed a statute saying that this comparable right, they wanted people who were performing military service to be treated as well as, why can't Congress say that? Are you actually saying that Congress, in some fashion, went beyond its authority by saying that you're entitled to such other rights, et cetera, that are just as good as what you give for other reasons, other comparable reasons? No, Judge Wood. Congress didn't exceed its authority. But if Congress wanted to change what was a long-settled rule that USERRA's predecessor statutes don't require paid military leave, if it wanted to do that, you would have expected it to do so clearly, and you would have expected it to do so with some hint, some contemporaneous evidence of any sort, that that's what Congress was doing. But why under the approach to statutory interpretation that the Supreme Court took in Bostock, are you asking for either a clear statement rule? I mean, as I understand, the majority in Bostock, they didn't really care about the expectations of the 1964 Congress when Civil Rights Act was passed. So why, where are you getting this requirement from? We have, hold on a minute. We have a sound problem. If you can hear me, I assure you, your time is not going to be held against you here. Hey, would you be able to dial in instead of just doing the video, if you can hear me? Is this Teams or is this Zoom? Yeah, I think Zoom. Yeah, I mean, it looks like Zoom, but they all sort of look alike. Yeah. I think they're calling you, if you can hear me. No, you can't. Just one minute. Oh. Hello? We can hear you now. Uh, sure. So should I just log off of Zoom altogether? We can hear you now. Can you hear me? I cannot hear Judge Wood. I can hear you, Judge Wood. Okay. I will do that right now. Okay. Okay. So, well, I'll say something. Yeah. I know. I don't understand. At first, we couldn't hear him, he couldn't hear you, and then it switched. Yeah. That's why I'm terrified about this class I'm teaching tomorrow. You know that the IT people have agreed to come and help me, but I have this nightmare. So I've been, I had, I've been doing it with a contact, and you're right to do it. It says I'm in a breakout session now. Can you hear me now? Yes, now I can hear you, Judge Wood. Okay. So can we restore? This seems to have consumed, what, about four or five minutes? So can you give him back his time? It looks like, it looks like the clock has actually stopped. Oh, you did stop it. Okay. Probably a minute ran off, though. Maybe, maybe a minute or two, but so we'll, we'll let you run on a bit at the end. All right. So you can, where, if you can retrieve your train of thought, please continue. Yes. So, Your Honor, I think you were asking about, about Bostock. Yes. Bostock doesn't, Bostock, and I think this goes to Judge Brennan's question to Mr. Taylor. Bostock does not stand for the proposition that you ignore statutory context or that you ignore other provisions with which you have to harmonize 4303 and 4316. Bostock also involved a situation where Congress was passing a statute that was an entirely new regulatory regime. Title VII was a brand new law. This is a situation where Congress is legislating against a preexisting backdrop, and that preexisting backdrop, including in Supreme Court cases like Monroe, was quite settled that paid military leave was not required by USARA's predecessors. If Congress wanted to provide mandatory paid military leave, of course it would be within its authority to do that, but you would expect there to be some hint that that's what Congress was doing, and Congress knew how to do that. Don't we learn something from the distinction between the Title V provision, which is an entitlement to paid military leave, and comparing that to USARA, which is not a right to paid military leave? It's just a right to equivalence? Well, I think you do learn something, which is that the Title V provision shows that when Congress wanted to create an entitlement to paid military leave, it knew how to do that. And it didn't do that in USARA. It did not do that in USARA. It knows how to do it, but it didn't. Well, but the key point of USARA is that it also did not provide a right to be paid for work not performed just because you are on paid military leave. If you look at 4303, first of all, we now have the parenthetical, including wages or salary for work performed, which shows that Congress included wages or salary in the definition of rights and benefits, only where the wages or salary are for time that's actually worked. Congress thus showed its awareness that without that inclusion, wages or salary of any other type are not benefits. So what about vacation pay? So the statute doesn't actually refer to vacation pay. It refers to vacation. Vacation is something, it's earned time away from work. So all the statute is saying there, as with the holiday pay that was at issue in Walter Meyer, is that if you accrue vacation when you're on jury leave or sick leave, you also have to accrue it on military leave, assuming comparability. But just by including vacation there, vacation is something that is on top of your ordinary wages, because it's, again, the accrued right to be away from work. Mr. Dabrowski, let me ask you a question that gets to what's troubling me about this. I think Mr. Taylor has a fair point about the breadth of the language. And I think, you know, you acknowledge, you don't concede that it's so broad as to pick up the coverage that his client is seeking. Suppose we have a hypothetical employer that sets up a leave that it calls civil service training. And the point of that is for those members of the staff that do good deeds in the community, they're volunteer firefighters, they're volunteer EMT workers, and the like. The company wants to cover that, wants to pay for that absence. And it may be along the same lines of the short-term duration that we're talking about here. Wouldn't somebody like Mr. White have a decent argument if his, pointing to the breadth of this language, if his employer said, no, that just extends to EMT and firefighters, it does not cover your duty at the guard? Judge Scudder, I think that example would be different from our case in a couple of respects. One, I do think the comparability analysis might be stronger there because of the similar purposes of the kind of civil service training leave for EMTs that you're would look more like the holiday pay program that was at issue in Walter Meyer. Because you have there a system where in order to qualify for particular, you satisfy certain conditions in order to qualify for civil service training. And if you are on leave for a non-military reason, you qualify, and then the military leave has to be treated similarly. But that is all a matter of- So that, here's what concerns me about that answer. You're responding to it by going to the point that I think makes good sense. It's what Judge Wood is pointing to. That it's really, this is a comparability statute. It's an anti-discrimination statute, if you will. All I was trying to do with my hypothetical is provide an example of paid leave, okay, for people that do things that are in the public interest, if you will. They're kind of civil, that show a degree of civic commitment. And it seems that this statutory scheme is all about asking, well, is that comparable to what this service member is seeking? And I don't know if that's the way that it's analyzed as a statutory matter on that hypothetical, why we wouldn't analyze it that way on these real facts. And your client may well prevail at the comparability phase of this. I just, in other words, can you, in other words, put your response, if you're able, more in statutory terms, rather than the purpose of the leave. Well, so in statutory terms, I think the answer is that the statute does not provide for, the statute does not provide for paid military leave just because the employer offers some other different kind of leave. If the statute offered that. Agreed, agreed. But if we talk about my civil service training, right, you'd say the employer doesn't have to choose to do that, but they are. They've made a choice. And so Mr. Taylor's client is going to say, well, the moment they make that choice, I'd sure like the same pay when I do guard duty. But here, I think, is the difference that there might be an argument in which, under which somebody on military leave should qualify for the civil service leave. Because if you allow an EMT to qualify, you also have to allow a reservist to qualify for the civil service leave. There is no argument that Mr. White ought to qualify for jury duty leave. Why isn't jury duty civil service? Why isn't jury duty a paradigmatic example of civil service? That may be its purpose, but under, but the way that any jury duty leave policy is written, it's not a general civil service policy the way Judge Scudder is positing. It's a particular civil service. I agree. It's not a general one. It's narrower than Judge Scudder's hypothesis. Right, and so the question is, does the employer have a type of leave for which military reservists need to be deemed qualified? No one would say that a military reservist who's taking leave ought to be paid because he or she has qualified for jury duty leave. You might say that a military— You wouldn't say that, but I think Mr. Taylor is certainly arguing that. I don't think, well, I don't think that Mr. Taylor would argue that either. I think Mr. Taylor would argue that the military reservist ought to be paid because the person on jury duty is being paid, but that's different from saying that the military reservist has qualified for jury duty leave. It may be, under Judge Scudder's hypothetical, that the military reservist actually ought to be deemed to qualify for civil service leave in much the same way as in Walter Meyer. In Walter Meyer, you had a statute, or you had a policy where the employer provided holiday pay as long as the employee worked during the week in which the holiday fell. But could I just ask you—incorporate into your discussion the regulation implementing Section 4316, because it does address how one assesses comparability, and it says that in order to decide whether any two types of leave are comparable, it doesn't say would you qualify for both types. It says the duration may be the most significant factor. So if you get a two-day funeral leave, that's not comparable to a six-month stint in Iraq. Those are just different. And then it says other factors such as the purpose, the ability to choose when to take the leave. I don't see the criterion that you're arguing for in this regulation. Judge, that's true, but that's because the regulation only applies at the next phase of the analysis if we think that there's actually a benefit that might be protected. And the problem here—I don't even think we get to the regulation in terms of assessing that kind of comparability. The question is, is there a protected benefit? And there is no protected benefit or right under the statute to be paid for work not performed as a general matter. No employer has a general paid leave policy. What employers have is policies that you get paid leave if you satisfy certain conditions. And so, again, on Judge Scudder's hypothetical, if some people are deemed to satisfy the civil service leave for EMT service, then maybe we get to the comparability analysis. But that's only because you have the kind of program that triggers the protections of the statute in the first place. Merely having jury duty leave or sick leave, that's not something that you can qualify for by being on military leave. It's not even a comparability question. To provide pay in that situation would simply be providing paid military leave of the sort that Congress understood before it passed you, Sarah, was not required by the predecessor statutes and of the sort that Congress knew how to provide when it wanted to in the federal leave statute. The only thing that confuses me about your response there, which makes me think I'm missing, that you're being clear and I'm missing something, is that it seems that what you're doing when you take the civil training leave is you're saying, oh, yeah, you might need to go through a full-blown statutory analysis, including on comparability, because the starting point for that looks like a service member may be being deprived of something that should fit within the ambit of that leave policy on a comparability analysis. It just seems to beg the question a bit because it seems like your starting point on jury duty and sick pay is, well, those don't start from a sufficient enough comparability ground and therefore the service member should not get comparable pay. In other words, it seems like it's begging the question a little bit. I think the only argument for providing somebody, for providing a military reservist with pay because there is a sick leave provision would have to be that as long as the employer provides some kind of leave, any leave, they also, the employer also has to provide military leave that is paid in the same way that sick leave is paid. The problem with that argument is that it treats pay for work not performed without satisfying any particular conditions for it as a right or benefit under the statute. But you know, can I zero in on that for a minute? I know this is a big part of your argument because you seem to see this as binary. It's either all work not performed or none. But in fact, under a comparability regime, an employer may pay for some work not performed, so to speak. An employer may pay for some periods of time during which the employee is not working and the employer may choose not to pay for other periods of time. Maybe they don't have a family leave policy that would give pay so they comply with the FMLA and they give unpaid time off for the birth of a child or an illness in the family, but they don't give paid time. Well, on a comparability rule, that's a policy about non-working time and it seems that there might be some times the employer would cover and others it would not. I think you're right, Judge Wood, that there's variability in policies, but I also think that the vast majority of employers are going to provide some amount of fully paid sick leave and paid jury duty leave of the sort that Mr. Taylor would argue is just categorically comparable. And that brings us right back to the point of Congress having created, on his view, through this statute, a paid military leave requirement for the vast majority of employers. And if Congress had done that, that would have been a sea change relative to the pre-existing regime without any clear indication that that's what Congress had done in a way that effectively overrode the much clearer federal leave statute, which does provide for paid military leave. You'll need to wrap up at this point. One final sentence, if you'd like. The district court's judgment should be affirmed because Congress, in passing this statute, did not make this kind of a sea change. And to construe the statute otherwise would create redundancy with other provisions of USERRA, would make incomprehensible Congress's subsequent amendment to the federal leave statute, and would also be inconsistent with the including parenthetical in 43032 itself. Thank you, Your Honor. Thank you very much. Mr. Taylor. Thank you very much. Just a few quick points in rebuttal. But before I get there, I do want to just pick up where my friend on the other side left off. And I want to clarify something about our position. Our position is not that if an employer provides, say, five days of paid sick leave, that if that leave is comparable to military leave, then there's some unlimited amount of paid military leave. That's not our position. It would be the benefit that is provided are just five days of paid leave. And it would be the same as, but not more favorable for, the military reservist. But the points I would like to focus on rebuttal, if I may, I'd like to focus first on the kind of elephant-mousehole point that my friend on the other side makes, and then turn briefly to comparability. Because I do think, as some of the questions have made clear, this case ultimately will turn on comparability, because this is a comparability statute. But just first on intent, the best evidence of Congress's intent, of course, is the words that it uses in legislation. And the words here are clear. And could those words have been clearer? I suppose. But as the Supreme Court recently reminded us in Bostock, that's not relevant. All that matters are the words that Congress actually wrote. And a court needs to interpret those words as faithfully as it can. But if you wanted to look beyond the text, the legislative history here, I think, leaves no doubt that Congress understood what it was doing. It explicitly said that it was codifying Walter Meyer. And so it had read that decision and approved of it. And in reading that decision, it would have kept going and read the dissent, which then made the point that if the majority opinion in that case were correct, then it inexorably leads to the conclusion that paid leave is a right or benefit that would be needed to be provided equally to an employee who takes leave for jury duty, for example. And so it could not have been a surprise to Congress that by enacting that statute, saying nothing about that situation, but instead using incredibly broad language, that it would bring about that very result. And I would just quickly, on the practical effect, I would underscore that, again, our position here, we're just focusing on short-term military leave, not long-term military leave. At the time USERRA was enacted, the vast majority of state and local governments, and then the federal government as well, provided paid military leave. While many employers provide some form of paid sick leave or paid jury duty leave, the vast majority of states do not require that. And for those that do, it's just a very small amount of time. And so if it's just five days, then that would have to be comparable. Now, real quickly on comparability, I think as Judge Wood, your questions pointed out, the Department of Labor's regulation points the way here. And duration is the most important factor. We don't have a record on duration. The other factors are whether the employee has the ability to choose when to take the leave and the nature of the leave. And there's a reason why United, in its brief, couldn't point to a single case other than the district court below in two sentences of analysis that actually resolved this question at the threshold in its favor. United itself didn't even make the argument below. And the Department of Justice, in bringing a case called Woodall during the Bush administration, took the position that military leave is comparable to jury duty leave and sick leave. And so I think if you were to arrest an opinion on the comparability piece, it would have ramifications going beyond paid leave. And Mr. Taylor, just so it's clear, the request that you're making on comparability is not a reversal of Judge Norgle alone in a declaration that there is comparability, but rather you're seeking a remand? Yes. I think there would just need to be some discovery taken on that. We just don't have a record on the key points. And if I could just kind of bring this all together with a concluding thought, United has made the decision that if one of its employees is called to perform grand jury service, for example, and they're required to take leave from work for a couple of days a month for a year or more, that those employees will receive full pay while they're gone. And all we are saying is that having made that decision, United has to do the exact same thing when an employee is summoned to perform similarly short-term military service. It's about equality, not preferential treatment. Our nation owes these veterans that much and USERRA entitles them to that much as a matter of law. Thank you. All right. Thank you very much to both counsel. We will take this case under advisement.